IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:25-CV-183-D

| | | |
|---|---|---|
| REECES CHAPEL MISSIONARY BAPTIST CHURCH, and JOHN DOE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| ASA BUCK, | ) | |
| | ) | |
| Defendant. | ) | |

On October 6, 2025, Reeces Chapel Missionary Baptist Church ("Reeces Chapel") and John Doe ("Doe") (collectively, "plaintiffs") filed a complaint against Asa Buck ("Buck" or "defendant") in his official capacity as Sheriff of Carteret County, North Carolina [D.E. 1]. The action arises from Doe's desire to attend religious services at the Reeces Chapel worship hall, which is within 300 feet of areas used for minors. See id. ¶¶ 22–39. North Carolina law restricts such attendance by sex offenders who committed an offense against a minor. See N.C. Gen. Stat. §§ 14-208.18(a)(2), 14-208.11A. Plaintiffs assert three claims under 42 U.S.C § 1983 and the First Amendment of the United States Constitution: freedom of speech (count one), free exercise of religion (count two), and right to associate (count three). See [D.E. 1] ¶¶ 40–72. On January 13, 2026, Buck moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim [D.E. 11] and filed a memorandum in support [D.E. 12]. See Fed. R. Civ. P. 12(b)(1), (6). On March 7, 2026, plaintiffs responded in opposition [D.E. 16]. On March 23, 2026, Buck replied [D.E. 18]. As explained below, the court denies Buck's motion to dismiss the complaint.

I.

Reeces Chapel is a religious organization that offers religious services in Newport, North Carolina. See Compl. [D.E. 1] ¶¶ 1, 18. Reeces Chapel has a small play area and an area used for the religious education of minors within 300 feet of its worship hall. See id. ¶¶ 4–6, 29–31. Buck considers the Reeces Chapel worship hall off-limits under subsection 14-208.18(a)(2) and has stated "that he will arrest any person subject to [the statute] [("covered person")] for being present at Reeces Chapel for any purpose." Id. ¶ 7; see id. ¶¶ 21, 32–33. Doe is a member of Reeces Chapel and is subject to subsection 14-208.18(a)(2). See id. ¶¶ 8, 23, 35.

Subsection 14-208.18(a)(2) prohibits an individual who is required to register as a sex offender in North Carolina, and who committed any offense against a minor victim, from being "[w]ithin 300 feet of any location intended primarily for the use, care, or supervision of minors when the place is located on premises that are not intended primarily for the use, care, or supervision of minors, including, but not limited to, places described in subdivision (1) of this subsection that are located in malls, shopping centers, or other property open to the general public." N.C. Gen. Stat. § 14-208.18(a)(2); see id. § 14-208.18(a), (c). Subdivision one describes "place[s] intended primarily for the use, care, or supervision of minors" as including "schools, children's museums, child care centers, nurseries, and playgrounds." Id. § 14-208.18(a)(1). Violating subsection 14-208.18(a)(2) is a Class H felony. See id. § 14-208.18(h). Class H felonies carry a presumptive term of imprisonment of up to 20 months, a fine, or both. See id. § 15A-1340.17; Doe v. Cooper, 842 F.3d 833, 839 (4th Cir. 2016).

Among other restrictions, subsection 14-208.11A makes it a Class H felony for an individual who has reason to believe that an offender is violating subsection 14-208.18(a)(2), and who intends to assist the offender in eluding arrest, to either:

(1) [w]ithhold information from, or fail to notify, a law enforcement agency about the offender's noncompliance with the requirements of [subsection 14-208.18(a)(2)], and, if known, the whereabouts of the offender[;]

(2) [h]arbor, attempt to harbor, or assist another person in harboring or attempting to harbor, the offender[;]

(3) [c]onceal, or attempt to conceal, or assist another person in concealing or attempting to conceal, the offender[; or]

(4) [p]rovide information to a law enforcement agency regarding the offender that the person knows to be false information.

N.C. Gen. Stat. § 14-208.11A(a)(1)–(4). Violators face a presumptive term of imprisonment of up to 20 months, a fine, or both. See id. § 15A-1340.17; Doe, 842 F.3d at 839.

Doe desires to attend religious services in the Reeces Chapel worship hall "for the express purpose of religious worship." Compl. ¶ 35; see id. ¶¶ 8, 39. Doe has a "sincerely held religious belief" that he must "attend worship services at a duly constituted Christian church." Id. ¶¶ 56–57. Doe would attend religious services in the worship hall if not for subsections 14-208.18(a)(2) and 14-208.11A. See id. ¶ 38. Doe alleges that subsections 14-208.18(a)(2) and 14-208.11A "render every church within a reasonable distance from [his] home off-limits because all such churches have either play areas or areas dedicated to the instruction of minors." Id. ¶ 58.

Reeces Chapel knows of Doe's conviction and status under subsection 14-208.18(a)(2) yet desires to admit him for religious services because of its "duty to minister to those seeking the comfort of Christ[,] . . . includ[ing] those persons on the North Carolina Sex Offender Registry." Id. ¶¶ 50–51; see id. ¶¶ 1, 9, 36–37. Reeces Chapel has a "sincerely held religious belief[]" that this duty necessitates in-person congregational worship. Id. ¶ 52; cf. Roberts v. Neace, 958 F.3d 409, 415 (6th Cir. 2020) (per curiam) (recognizing the Christian admonition of "not forsaking the assembling of ourselves together" (citation omitted)). Reeces Chapel also maintains a religious value system it seeks to instill in its members through "expressive activities of religious worship,

teaching, learning, and other expressive activities." Compl. ¶¶ 65–66. Thus, Reeces Chapel would admit Doe to its religious services if not for subsections 14-208.18(a)(2) and 14-208.11A. See id. ¶ 37.

On October 6, 2025, plaintiffs filed a complaint against Buck, alleging that subsections 14-208.18(a)(2) and 14-208.11A substantially burden their First Amendment "rights of [s]peech, [f]ree [e]xercise, and [a]ssociation." Id. ¶ 39. Specifically, plaintiffs allege that as applied to them, the statutes (1) place an overbroad "burden [on] protected speech—religious worship, teaching, and evangelizing," (2) unduly burden their free exercise of religion by restricting their ability to offer and engage in congregational worship, and (3) unduly burden their freedom to associate "by specifically excluding individuals from engaging in" expressive activities of religious worship, teaching, and learning. Id. ¶¶ 41, 48, 55–56, 62, 66–67, 72. Plaintiffs seek a declaratory judgment that subsections 14-208.18(a)(2) and 14-208.11A are unconstitutional "as applied to [Doe's] attendance at Reeces Chapel for religious worship and activities and as applied generally to attendance at a duly constituted church for religious worship and activities." Id. at 11. Plaintiffs also seek to enjoin Buck from enforcing subsections 14-208.18(a)(2) and 14-208.11A against plaintiffs based on "Doe's (or any other registrant's) attendance or participation in religious worship or instruction at Reeces Chapel or other duly constituted church." Id.

II.

Buck moves to dismiss Reeces Chapel's claims for lack of standing. See [D.E. 12] 4–6; Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted), abrogated on other grounds by Riley v. Bondi, 606 U.S. 259 (2025); see Holloway v. Pagan River

Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of Geo. Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005); Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. A plaintiff bears the burden of showing the court has subject-matter jurisdiction over its claims, including whether the plaintiff has standing. See Steel Co., 523 U.S. at 104; Ali v. Hogan, 26 F.4th 587, 595–96 (4th Cir. 2022); Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). But "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009); see Winyah Rivers All. v. Active Energy Renewable Power, LLC, 579 F. Supp. 3d 759, 764 (E.D.N.C. 2022).

A plaintiff-organization can show that it has standing to sue in its own right ("organizational standing") or on behalf of its members ("associational standing"). See, e.g., Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll., 600 U.S. 181, 199 (2023); Havens Realty Corp. v. Coleman, 455 U.S. 363, 378–79 (1982); Warth v. Seldin, 422 U.S. 490, 511 (1975); S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 182 (4th Cir. 2013); White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 155 (4th Cir. 2000) (en banc); N.C. All. for Retired Ams. v. Hirsch, 741 F. Supp. 3d 318, 330 (E.D.N.C. 2024).

Reeces Chapel claims organizational standing. See, e.g., Compl. ¶ 39; [D.E. 16] 3. A plaintiff-organization "must adequately allege that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the

injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." S. Walk, 713 F.3d at 182 (cleaned up); see FDA v. All. for Hippocratic Med., 602 U.S. 367, 393–94 (2024); Friends of the Earth, Inc. v. Laidlaw Env't Servs. Inc., 528 U.S. 167, 180–81 (2000); cf. Spokeo, Inc. v. Robins, 578 U.S. 330, 338–40 (2016); LaFave v. Cnty. of Fairfax, 149 F.4th 476, 484–85 (4th Cir. 2025), cert. denied, 146 S. Ct. 1799 (2026); Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018). Moreover, it must establish standing for each claim and each form of relief sought. See Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017); Davis v. FEC, 554 U.S. 724, 734 (2008); Laidlaw, 528 U.S. at 185; City of Los Angeles v. Lyons, 461 U.S. 95, 105–06 & n.7 (1983). The Declaratory Judgment Act does not independently confer subject-matter jurisdiction or create substantive rights. See 28 U.S.C. § 2201(a); California v. Texas, 593 U.S. 659, 672 (2021); Poe v. Ullman, 367 U.S. 497, 506 (1961); Wells v. Johnson, 150 F.4th 289, 301 (4th Cir. 2025).

These standing requirements are "the irreducible constitutional minimum." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992); see Spokeo, 578 U.S. at 338. At the motion-to-dismiss stage, however, the constitutional minimum is "relatively modest." Lowy v. Daniel Def., LLC, 167 F.4th 175, 194 (4th Cir. 2026) (citation omitted).

Buck attacks injury-in-fact. Buck argues that Reeces Chapel fails to show an "actual or imminent" injury because it does not allege a credible threat that Buck will prosecute the church or its leadership under subsection 14-208.11A. See [D.E. 12] 5–6; [D.E. 18] 3–4. Buck also argues that Reeces Chapel fails to show a "concrete or particularized" injury because the challenged statutes "do not facially restrict expressive activity." [D.E. 18] 2–4. For its part, Reeces Chapel alleges that Buck has deemed its property off-limits under subsection 14-208.18(a)(2) and threatened to arrest any covered person present at Reeces Chapel for any purpose, which when

combined with subsection 14-208.11A's affirmative reporting requirements, has chilled its expressive activities under the First Amendment. See Compl. ¶¶ 7, 32–39, 50–55, 64–70.

A plaintiff seeking prospective relief need not expose itself to prosecution before bringing suit. See, e.g., Steffel v. Thompson, 415 U.S. 452, 459 (1974). Instead, a plaintiff may bring a pre-enforcement suit when it plausibly "allege[s] an intention to do something prohibited by the statute and a credible threat of prosecution" burdening its legally-protected interest. LaFave, 149 F.4th at 485 (cleaned up); see Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158–64 (2014); Babbitt v. Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). A credible threat exists if a plaintiff alleges "fears of state prosecution that are not imaginary or speculative and are actual and well-founded enough to establish that the statute will be enforced against them." Md. Shall Issue, Inc. v. Hogan, 971 F.3d 199, 217 (4th Cir. 2020) (cleaned up); see LaFave, 149 F.4th at 485; John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ., 78 F.4th 622, 629 (4th Cir. 2023) ("[T]he claimed harm must not be so speculative as to lie at the end of a highly attenuated chain of possibilities." (citation omitted)); Bryant v. Woodall, 1 F.4th 280, 285 (4th Cir. 2021). A threat of prosecution is particularly credible when the defendant has not disavowed enforcement against the plaintiff's intended conduct. See Driehaus, 573 U.S. at 164–65; Bryant, 1 F.4th at 285; Kenny, 885 F.3d at 288; N.C. Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710 (4th Cir. 1999) (noting a "non-moribund statute that facially restricts expressive activity by the class to which plaintiffs belong presents" a credible threat "in the absence of compelling evidence to the contrary," particularly when "a statute tends to chill the exercise of First Amendment rights" (cleaned up)).

The United States Court of Appeals for the Fourth Circuit also has held that a plaintiff may bring a pre-enforcement suit if it "make[s] a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising [its] right to free expression." Kenny, 885 F.3d at 288

(cleaned up); see Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018); Cooksey v. Futrell, 721 F.3d 226, 235–36 (4th Cir. 2013); Benham v. City of Charlotte, 635 F.3d 129, 135 (4th Cir. 2011). The chilling effect "must be objectively reasonable." Cooksey, 721 F.3d at 236 (citation omitted). A plaintiff-organization may suffer the same injury where a statute or governmental action chills its expressive activities. See First Choice Women's Res. Ctrs., Inc. v. Davenport, 146 S. Ct. 1114, 1124–26 (2026); La Union Del Pueblo Entero v. Abbott, 151 F.4th 273, 286 (5th Cir. 2025), cert. denied, No. 25-904, 2026 WL 1855021 (U.S. June 29, 2026), and cert. denied, No. 25-916, 2026 WL 1855121 (U.S. June 29, 2026); Inst. for Free Speech v. Johnson, 148 F.4th 318, 327–30 (5th Cir. 2025); Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109–11 (2d Cir. 2017); Cath. League for Religious & C.R. v. City & Cnty. of S.F., 624 F.3d 1043, 1048–49, 1053 (9th Cir. 2010) (en banc).

Reeces Chapel plausibly alleges an actual, concrete, and particularized injury to itself. Reeces Chapel alleges that it sincerely believes that admitting Doe to in-person congregational worship is an essential component of its religious ministry; that Doe is a member who presently desires to attend; that Reeces Chapel presently desires to admit him; that Buck has declared Reeces Chapel off-limits under subsection 14-208.18(a)(2) and threatened to arrest any covered person (like Doe) present at Reeces Chapel for any purpose; and that Reeces Chapel therefore refrains from admitting Doe. See Compl. ¶¶ 7–10, 32–39, 50–55, 64–70. Thus, Reeces Chapel alleges that Buck's stated enforcement position causes it to alter its own worship, teaching, and association under the First Amendment. That self-censorship suffices to establish injury-in-fact. See Abbott, 900 F.3d at 176; Kenny, 885 F.3d at 288; Cooksey, 721 F.3d at 235–36; Benham, 635 F.3d at 135; White Tail Park, 413 F.3d at 460–61.

Buck's contrary arguments construe Reeces Chapel's injury too narrowly. Reeces Chapel need not allege that Buck has separately threatened to prosecute its leadership under subsection 14-208.11A. Contra [D.E. 12] 5–6. Buck's threat to enforce subsection 14-208.18(a)(2) at Reeces Chapel against covered persons like Doe is the governmental action which causes Reeces Chapel to refrain from admitting Doe, and Buck's threat is actual, not "imaginary or wholly speculative." Bryant, 1 F.4th at 285 (citation omitted); cf. Kerns, 585 F.3d at 193 (noting the court must "assume the truthfulness of the facts alleged" in the complaint when defendant claims the facts fail to support subject-matter jurisdiction). Moreover, subsection 14-208.11A and its affirmative reporting requirement reinforce the "objective[] reasonable[ness]" of that chill because Reeces Chapel knows Doe's status, desires to admit him notwithstanding Buck's announced position that Doe's attendance would be unlawful, and alleges that it refrains from doing so because of the challenged statutes. Cooksey, 721 F.3d at 236 (citation omitted); see Compl. ¶¶ 32–39. To have standing, plaintiffs need not violate the statutes or await prosecution before seeking prospective relief. See Driehaus, 573 U.S. at 158–64; Steffel, 415 U.S. at 452; Bryant, 1 F.4th at 285–86; Kenny, 885 F.3d at 288; Bartlett, 168 F.3d at 710–11; Doe 1–5 v. Cooper, 40 F. Supp. 3d 657, 670–72 (M.D.N.C. 2014), aff'd, 842 F.3d 833 (4th Cir. 2016).

As for traceability and redressability, Reeces Chapel's injury is fairly traceable to Buck's enforcement position and would be redressed by declaratory or injunctive relief prohibiting Buck from enforcing the challenged statutes against plaintiffs based on Doe's attendance for religious services at Reeces Chapel.[1] See Lujan, 504 U.S. at 560–61; White Tail Park, 413 F.3d at 459–61;

[1] Plaintiffs also request injunctive relief concerning unidentified registrants and nonparty churches. See Compl. 11. The scope of any final declaratory or injunctive relief is not presently before the court. And a potentially overbroad prayer for relief does not require the court to dismiss an otherwise plausible claim. Of course, if plaintiffs prevail, the court will only "provide complete relief to each plaintiff with standing to sue." Trump v. CASA, Inc., 606 U.S. 831, 861 (2025); see

Abbott, 900 F.3d at 176–77. Accordingly, Reeces Chapel has standing in its own right to seek prospective relief concerning Doe's attendance at Reeces Chapel.

Alternatively, Reeces Chapel has associational standing. Under that theory, Reeces Chapel "can assert standing as the representative of its members if (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." W. Va. Rivers Coal., Inc. v. Chemours Co. FC, 178 F.4th 102, 110–11 (4th Cir. 2026) (cleaned up); see Students for Fair Admissions, Inc., 600 U.S. at 199. The parties do not dispute that Reeces Chapel's member (Doe) has standing in his own right. See [D.E. 12] 5–6 (arguing that Reeces Chapel's leadership does not satisfy associational standing). Doe's participation in Reeces Chapel's worship services is an interest germane to its ecclesial purpose. And neither the claims asserted nor the declarative and injunctive relief requested require Doe's participation in the suit. Thus, the court denies Buck's motion to dismiss under Rule 12(b)(1).

III.

Buck also moves to dismiss plaintiffs' complaint for failure to state a claim. See [D.E. 12] 6–17; Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter,

---

Town of Chester, 581 U.S. at 439; Chamber of Com. of the U.S. v. Lierman, 151 F.4th 530, 543 (4th Cir. 2025).

accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, plaintiffs' factual allegations must "nudge[] [their] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

A.

In count one, plaintiffs allege that the challenged statutes violate the Free Speech Clause of the First Amendment by placing an overbroad burden on their religious worship and teaching. See Compl. ¶¶ 40–48.[2] Specifically, plaintiffs allege that the challenged statutes restricting Doe's presence at Reeces Chapel for religious services do not advance important governmental interests

[2] Although plaintiffs characterize the challenged statutes as "overbroad" in count one, plaintiffs bring their free speech claim "as-applied" to their own conduct; therefore, the court construes count one as an as-applied First Amendment challenge and does not address whether plaintiffs plausibly allege overbreadth to nonparties. Compl. ¶¶ 47–48; see Cooper, 40 F Supp. 3d at 677 (construing similar pleadings as an as-applied claim because "there is no such thing as an as-applied overbreadth challenge").

unrelated to the suppression of speech and also burden substantially more speech than is necessary to further those interests. See id. ¶¶ 42–46.

The Free Speech Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, "prohibits laws abridging the freedom of speech." Free Speech Coal., Inc. v. Paxton, 606 U.S. 461, 470 (2025) (quotation omitted); see Stromberg v. California, 283 U.S. 359, 368 (1931); Fusaro v. Cogan, 930 F.3d 241, 248 (4th Cir. 2019); Snyder v. Phelps, 580 F.3d 206, 214 n.4 (4th Cir. 2009), aff'd, 562 U.S. 443 (2011). But this principle "does not confer an absolute right to speak." Gitlow v. New York, 268 U.S. 652, 666 (1925). The First Amendment "protects speech along a spectrum," meaning that speech laws "receive different levels of judicial scrutiny depending on the type of regulation and the justifications and purposes underlying it." Fusaro, 930 F.3d at 248; see Stuart v. Camnitz, 774 F.3d 238, 244 (4th Cir. 2014). Religious worship and teaching are protected speech. See, e.g., Widmar v. Vincent, 454 U.S. 263, 269 n.6 (1981).

When a challenged law burdens protected speech, content-neutral restrictions are subject to intermediate scrutiny and content-based restrictions are subject to strict scrutiny. See Billups v. City of Charleston, 961 F.3d 673, 684–85 (4th Cir. 2020). A content-neutral law which merely incidentally burdens protected speech is likewise subject to intermediate scrutiny and survives only if it (1) "advances important governmental interests unrelated to the suppression of free speech" and (2) "does not burden substantially more speech than necessary to further those interests." Paxton, 606 U.S. at 478, 495–96; see Turner Broad. Sys., Inc. v. FCC, 520 U.S. 180, 189 (1997); Am. Entertainers, LLC v. City of Rocky Mount, 888 F.3d 707, 715 (4th Cir. 2018); Satellite Broad. & Commc'ns Ass'n v. FCC, 275 F.3d 337, 355 (4th Cir. 2001); cf. Reynolds v. Middleton, 779 F.3d 222, 226 (4th Cir. 2015). Where the government does not satisfy these elements, the court

may assume intermediate scrutiny applies and not determine whether the law "might be content-based and thus subject to strict scrutiny." Billups, 961 F.3d at 684–85.

To make a speech claim under the First Amendment, plaintiffs bear "the initial burden of proving that speech was restricted by the governmental action in question." Reynolds, 779 F.3d at 226; see Hebb v. City of Asheville, 145 F.4th 421, 432 (4th Cir. 2025). If plaintiffs succeed in their "initial showing, the burden then falls on the government to prove the constitutionality of the speech restriction" under the appropriate level of scrutiny. Reynolds, 779 F.3d at 226; see Billups, 961 F.3d at 685; Doe, 842 F.3d at 846. Under intermediate scrutiny, the government must "present actual evidence supporting its assertion that a speech restriction does not burden substantially more speech than necessary." Reynolds, 779 F.3d at 229; see Billups, 961 F.3d at 685; Doe, 842 F.3d at 846; Bruni v. City of Pittsburgh, 824 F.3d 353, 371–72 (3d Cir. 2016); Ross v. Early, 746 F.3d 546, 556 (4th Cir. 2014). "[A]rgument unsupported by the evidence will not suffice to carry the government's burden." Reynolds, 779 F.3d at 229.

Plaintiffs plausibly allege that their religious worship and teaching are protected speech; that the challenged statutes exclude Doe from physically participating in that speech at Reeces Chapel; that all reasonably accessible churches to Doe have areas for the use or instruction of minors that produce the same restriction; and that Reeces Chapel faces an affirmative reporting requirement or prosecution if it holds religious services with Doe present on the property. See Compl. ¶¶ 37–38, 41, 48, 58. Plaintiffs also allege that Buck's enforcement position applies regardless of whether Doe enters the Reeces Chapel areas used for minors, interacts with a minor, or poses any danger under the circumstances of a particular religious service. See id. ¶¶ 22–33, 41–48. Thus, plaintiffs satisfy their initial showing and the burden shifts to the government to show the fit of its restrictions. Cf., e.g., NetChoice v. Brown, No. CV 25-322, 2025 WL 3267786,

at *14 (D. Md. Nov. 24, 2025) (unpublished) (noting at the pleading stage that courts generally find "First Amendment challenges adequately alleged where the plaintiff has sufficiently alleged that the challenged statute applies to protected speech such that it triggers First Amendment scrutiny").

Buck as a governmental actor argues that the challenged statutes facially regulate conduct, not speech, and that the North Carolina General Assembly cured the constitutional defect identified in Doe, by limiting subsection 14-208.18(a)(2) to offenders whose offenses involved minors. 842 F.3d 833; see [D.E. 12] 8–11; [D.E. 18] 4–6. These arguments do not satisfy Buck's burden.

As for how the challenged statutes apply, the statutes plausibly burden protected speech by regulating who may be on certain church property for religious worship and teaching, and subjecting to prosecution those who do not affirmatively report such presence, with no mechanism to request an exception. See NC RSOL v. Boone, 402 F. Supp. 3d 240, 262–63 (M.D.N.C. 2019); Cooper, 40 F. Supp. 3d at 680 ("While [N.C. Gen. Stat.] § 14-208.18 could provide an outright exception (as it does for voting) or an opportunity to seek permission to allow [p]laintiffs to exercise such a right (as it does for parents or guardians seeking to go to their children's school), [section] 14-208.18 provides no such exception for exercising one's free speech rights . . . [or] an option to petition a court for more tailored or individualized restrictions, as Virginia's comparable statute does."). That incidental burden triggers intermediate scrutiny. See, e.g., Paxton, 606 U.S. at 478. Moreover, although protecting minors is an important governmental interest, the government also must establish the fit between that interest and the speech restrictions. See id. at 496; Turner Broad., 520 U.S. at 189; City of Rocky Mount, 888 F.3d at 715; Doe, 842 F.3d at 845–46; Reynolds, 779 F.3d at 228–29; Satellite Broad., 275 F.3d at 355; cf. Packingham v. North Carolina, 582 U.S. 98, 106–07 (2017).

As for adequacy of the statutory amendment, curing one constitutional defect does not foreclose the possibility of another. The amendment does not itself establish that the challenged statutes, as applied to plaintiffs, do not "burden substantially more speech than is necessary." Reynolds, 779 F.3d at 226; see Boone, 402 F. Supp. 3d at 262–63. Instead, the court must consider the statutes' operation in their present form, the nature of the regulated location and activity, the governmental interest asserted, and the fit between the restrictions and that interest. See, e.g., Doe, 842 F.3d at 842–48. The court cannot resolve those factual and evidentiary questions on the complaint and statutory text alone. Thus, the court denies Buck's motion to dismiss count one for failure to state a claim.

B.

In count two, plaintiffs allege that the challenged statutes violate the Free Exercise Clause of the First Amendment by unduly burdening their free exercise of religion. See Compl. ¶¶ 49–62. Specifically, plaintiffs allege that Reeces Chapel has a sincerely held religious belief that it must minister to "those persons on the North Carolina Sex Offender Registry" at in-person congregational worship services; that Doe has a sincerely held religious belief that he must physically participate in congregational worship; that Doe is a member of Reeces Chapel and desires to attend its services; that Reeces Chapel desires to admit him; and that plaintiffs cannot fulfill these duties in light of the challenged statutes and Buck's enforcement position. See id.

The Free Exercise Clause of the First Amendment, applicable to the states through the Fourteenth Amendment, prohibits laws "prohibiting the free exercise of religion." Mahmoud v. Taylor, 606 U.S. 522, 545 (2025) (citation omitted); see Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 524 (2022); Fulton v. City of Phila., 593 U.S. 522, 532 (2021); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520, 531 (1993). "The clause forbids government from adopting

laws designed to suppress religious belief or practice." Am. Life League, Inc. v. Reno, 47 F.3d 642, 654 (4th Cir. 1995). But no constitutional right—including the right of free exercise of religion—is absolute. See, e.g., Jacobson v. Massachusetts, 197 U.S. 11, 26 (1905).

A "neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice." Reno, 47 F.3d at 654; see Trinity Lutheran Church of Columbia, Inc. v. Comer, 582 U.S. 449, 460 (2017); Lukumi, 508 U.S. at 531; Emp't Div., Dept. of Human Res. of Ore. v. Smith, 494 U.S. 872, 878–80 (1990). But a law may reveal a lack of neutrality "by protecting secular activities more than comparable religious ones." Berean Baptist Church v. Cooper, 460 F. Supp. 3d 651, 662 (E.D.N.C. 2020) (citation omitted). Moreover, a law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." Kennedy, 597 U.S. at 526 (cleaned up); see Fulton, 593 U.S. at 533. "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny," requiring the government to show "that its restrictions serve a compelling interest and are narrowly tailored to that end." Kennedy, 597 U.S. at 526, 532; see Lukumi, 508 U.S. at 546.

Section 14-208.18 includes four exceptions to subsection (a) providing relief mechanisms for covered persons (1) who are the parent or guardian of a student enrolled in a school to visit that school property, (2) who are eligible to vote to visit polling places, (3) who are eligible to attend public school to attend such schools, or (4) who are juveniles to visit restricted areas for medical treatment or mental health services. See N.C. Gen. Stat. § 14-208.18(d)–(g). Furthermore, because subsection 14-208.11A imposes a duty to report covered persons who violate any requirement in Article 14, section 14-208.11A as applied to plaintiffs' conduct necessarily incorporates the four exceptions within section 14-208.18. See id. § 14-208.11A. Such an

exception regime "reveal[s] a lack of neutrality by protecting secular activities more than comparable religious ones." Berean Baptist Church, 460 F. Supp. 3d at 662 (citation omitted). The state appears to trust the community's safety more when an offender votes or spends time at his child's school than when the offender goes to church (where minors may or may not be present). It cannot do so without justifying its choice with evidence. Additionally, the challenged statutes are not generally applicable because they turn on mechanisms for individualized exemptions. See, e.g., Kennedy, 597 U.S. at 526. Because failing either test triggers strict scrutiny, Buck must show that the "restrictions serve a compelling interest and are narrowly tailored to that end." Id. at 532.

Denying that the challenged statutes at all burden plaintiffs, Buck argues the laws "do not affect [Doe's] ability to exercise religion" because Doe "can join Reeces Chapel and participate in fellowship" so long as Doe complies with subsection 14-208.18(a)(2) like "[a]ll sex offenders" subjected to the statute, and that Reeces Chapel may include Doe in its ministry so long as it does not violate subsection 14-208.11A. [D.E. 12] 13. In support, Buck cites Doe v. Virginia Department of State Police, where the court dismissed the plaintiff's free exercise claim against an analogous neutral proximity law of general applicability. See No. 3:10-CV-533, 2011 WL 2551014, at *12–13 (E.D. Va. June 27, 2011) (unpublished), aff'd, 713 F.3d 745 (4th Cir. 2013); [D.E. 12] 12–13.

As for Buck's argument that the challenged statutes do not burden plaintiffs' free exercise rights so long as plaintiffs do not violate the law, Buck's conclusory assertions do not satisfy his burden under strict scrutiny. Indeed, his evidence-free assertions would not be enough to satisfy the lower burden under intermediate scrutiny. See, e.g., Reynolds, 779 F.3d at 229. Although "the existence of a governmental interest may be established by reference to case law," and case law

readily supports that protecting minors is important, the government also must provide "actual evidence" to support the fit of its regulation. Id. at 228–29. Even if referencing case law satisfied Buck's burden, Buck erroneously cites Doe v. Virginia Department of State Police. In Doe, a sex-offender registrant brought a free-exercise challenge against Virginia's analogous proximity law, which "contains a provision that can relax the prohibition against entering" restricted areas. 2011 WL 2551014, at *2. The plaintiff did not request an exception before bringing suit. Instead, she claimed that the "registration law and its procedures . . . frustrate[d] [her] ability to attend churches with adjoining daycares" by requiring that she first "ask for permission." Id. at *12. The court dismissed her claim, deeming the registration law a neutral law of general applicability which "only incidentally affect[ed] the plaintiff's ability to practice her religion." Id. The Fourth Circuit affirmed for lack of standing because the plaintiff's harm was hypothetical—she had "not taken any of the steps necessary to access" the desired properties. Doe, 713 F.3d at 754.

In contrast, Reeces Chapel and Doe lack opportunities (other than a lawsuit) to request accommodation of their free exercise right under the challenged statutes. See Cooper, 40 F. Supp. 3d at 670–71 (finding the same in challenge to unamended section 14-208.18). Plaintiffs concede that an exception mechanism similar to Doe's "might cure the constitutional defect" they plausibly allege arises in the challenged statutes. [D.E. 16] 6. But where that mechanism does not exist in North Carolina, and where Buck does not present evidence of how the challenged statutes are narrowly tailored, Buck has not met his burden for dismissal. See Kennedy, 597 U.S. at 532; Fulton, 593 U.S. at 533; Lukumi, 508 U.S. at 546; Berean Baptist Church, 460 F. Supp. 3d at 662. Thus, the court denies Buck's motion to dismiss count two for failure to state a claim.

C.

In count three, plaintiffs allege that the challenged statutes violate the First Amendment by unduly burdening their right to freely associate for expressive activities. See Compl. ¶¶ 63–72. Specifically, plaintiffs allege that Reeces Chapel's core activities are worship, teaching, and evangelizing; that these activities are inherently expressive; that Reeces Chapel and its members (like Doe) presently seek to associate for the express purpose of these activities; and that the challenged statutes severely burden their ability to associate and engage in these activities. See id.

"The First Amendment guarantees all Americans the rights to speak, worship, publish, assemble, and petition their government freely," and each of these rights "necessarily carries with it a corresponding right to associate with others." Davenport, 146 S. Ct. at 1122 (cleaned up) (emphasis added); see 303 Creative LLC v. Elenis, 600 U.S. 570, 586 (2023); Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 606 (2021); Boy Scouts of Am. v. Dale, 530 U.S. 640, 647–48 (2000); Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984) (collecting cases); Buckley v. Valeo, 424 U.S. 1, 25 (1976) (per curiam). "[G]overnment actions tending to curtail the freedom to associate warrant the closest scrutiny under the First Amendment." Davenport, 146 S. Ct. at 1122 (cleaned up). But like any constitutional right, the right to expressive association is not absolute. The government may burden it with laws so long as they are "adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." Roberts, 468 U.S. at 623.

Reeces Chapel alleges that it maintains and communicates a system of religious values to its members through congregational worship, teaching, and evangelism; that the challenged statutes exclude Doe from physically participating in the church's central expressive activities because Reeces Chapel's worship hall is within 300 feet of areas used for minors; and that all

reasonably accessible churches to Doe have areas for the use or instruction of minors that produce the same restriction. See Compl. ¶¶ 32–39, 58, 64–70. These allegations plausibly allege more than an incidental effect on expressive association. Cf. McGuire v. Marshall, 512 F. Supp. 3d 1189, 1232–34 (M.D. Ala. 2021) (finding the same where Alabama's proximity law restricts sex offenders from within 2,000 feet of areas used for minors); Cooper, 40 F. Supp. 3d at 676, 680–81. The court cannot resolve on the pleadings whether such exclusion is sufficiently justified and appropriately tailored. See Def.'s Mem. [D.E. 12] 16–17 (making conclusory arguments that the challenged statutes do not "affect[] Reeces Chapel's composition as a group or organization" or "affect [Doe's] membership in the congregation" because these laws merely "regulate conduct"); Davenport, 146 S. Ct. at 1122; Dale, 530 U.S. at 647–48; Roberts, 468 U.S. at 623; Buckley, 424 U.S. at 25. Thus, the court denies Buck's motion to dismiss count three for failure to state a claim.

IV.

In sum, the court DENIES defendant's motion to dismiss plaintiffs' complaint for lack of subject-matter jurisdiction or for failure to state a claim [D.E. 11].

SO ORDERED. This 14 day of August, 2026.

JAMES C. DEVER III
United States District Judge